IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| **UNITED STATES,** § | |
| § | |
| Plaintiff, § | |
| v. § | Criminal Case No. **3:15-CR-519-L(03)** |
| § | |
| **IFEANYI "TIM" EGUBUCHUNAM,** § | |
| § | |
| Defendant, § | |
| § | |
| and § | |
| § | |
| **BANK OF AMERICA, N.A.;** § | |
| **COMPUTERSHARE; HCA HOLDINGS,** § | |
| **INC.; TRANSAMERICA PREMIER** § | |
| **LIFE INSURANCE CO.; COLUMBIA** § | |
| **NORTH TEXAS SUBSIDIARY** § | |
| **GP, LLC; and MERRILL LYNCH,** § | |
| **PIERCE, FENNER & SMITH, INC.,** § | |
| § | |
| Garnishees. § | |

## MEMORANDUM OPINION AND ORDER

Before the court are Chinyelu "Chi" Nnake ("Ms. Nnake")'s Motion to Dissolve Garnishments and Return Property, Or Set a Deadline for the Government to Provide Evidence of Fraudulent Transfers or Property, Followed By A Hearing (Doc. 707), filed November 18, 2020; the Government's Motion for Final Order of Garnishment and Order Imposing Federal Lien (Doc. 716), filed March 1, 2021; and Ms. Nnake's Motion for Leave to File Sur-Reply to the Government's Motion for Final Order of Garnishment (Doc. 721), filed April 6, 2021. After considering the motions, evidence, and applicable law, the court **grants** the Government's Motion for Final Order of Garnishment and Order Imposing Federal Lien (Doc. 716) and will enter a Final Order of Garnishment by separate document.  Ms. Nnake's Motion for Leave to File Sur-Reply (Doc. 721) and her  Motion to Dissolve Garnishments and Return Property, Or Set a Deadline for

**Memorandum Opinion and Order – Page 1**

the Government to Provide Evidence of Fraudulent Transfers or Property, Followed By A Hearing (Doc. 707) are **denied** in light of the court's determination that, as a matter of law, the Government's motion should be granted, and no hearing is required or necessary to resolve the pending motions and legal issues presented. The court also **strikes** Ms. Nnake's Surreply (Doc. 720) that was filed without leave of court.

I.  Background

On November 16, 2015, Defendant Ifeanyi "Tim" Egubuchunam ("Defendant Egubuchunam") pleaded guilty to bribing a public official. On August 8, 2016, Defendant Egubuchunam was later sentenced to 51 months imprisonment, and he was ordered to pay a $100 special assessment fee and $2,072,740.17 in restitution in accordance with the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3663A. A judgment to this effect was entered on August 10, 2016. According to the Government, Defendant Egubuchunam owes an outstanding balance of more than $1.9 million as of March 1, 2021. The Government contends that, upon entry of the judgment, a lien arose against all of Defendant Egubuchunam's property and rights to property, pursuant to 18 U.S.C. § 3613(c). On August 17, 2016, the Department of Justice filed a Notice of Lien in the public records in Collin County, Texas, to perfect that lien on Defendant Egubuchunam's property. Gov't App. 1 (Doc. 707).

After entry of the judgment in this case, Defendant Egubuchunam and his then-wife Ms. Nnake filed for divorce in Collin County, Texas, in September 2016, but they continued to reside together in the family home located at 2505 Coolwater Drive in Plano, Collin County, Texas, until Defendant Egubuchunam reported to the Bureau of Prisons to begin serving his sentence on October 11, 2015. *Id.* at 12, 17; *see also* Tr. 78 (Doc. 544) (self-surrender date ordered by the court). The Final Divorce Decree dissolving their eighteen-year marriage was entered on

November 14, 2016.  Doc. 606-1 (Final Divorce Decree); *see also* Gov't App. 16 (June 17, 1997 marriage date).  The Final Divorce Decree also divided Defendant Egubuchunam's and Ms. Nnake's property and debts.  Doc. 606-1.

On April 12, 2017, the Government moved, pursuant to sections 3304 and 3306 of the Federal Debt Collection Act ("FDCPA"), the Texas Uniform Fraudulent Transfer Act, and the Texas Family Code for an order voiding the divorce decree and setting aside the division of property as fraudulent. Doc. 606. The Government argued that the division and transfer of property to Ms. Nnake was fraudulent because, among other things, substantially all of Defendant Egubuchunam's assets were transferred to Ms. Nnake, leaving Defendant Egubuchunam with little to pay the large restitution obligation.  The Government, therefore, contended that the transfer of property in the divorce decree was intended to defraud the United States, who was a creditor of Defendant Egubuchunam when the Final Divorce Decree was executed and entered.

The Government's motion was referred to the magistrate judge and, on July 10, 2018, the magistrate judge issued her Findings, Conclusions, and Recommendation ("Report") (Doc. 671), recommending that the court deny the Government's motion because she was unaware of any cases in which courts used the FDCPA to void a state divorce decree.  In addition, the magistrate judge determined that there was insufficient evidence that the property transfers in the divorce decree were actually or constructively fraudulent.  The court accepted the magistrate judge's findings and conclusions on January 15, 2019, but it denied without prejudice the Government's motion in light of the Government's request for it to defer making a final ruling on the property until after it conducted discovery and filed a dispositive motion supported by additional evidence.  Doc. 682.

Approximately two months later in March 2019, Ms. Nnake moved for entry of a final order declaring that she is not be required to forfeit any property to pay Defendant Egubuchunam's

restitution obligation and that all garnished property be returned to her unencumbered. Doc. 686. For support, Ms. Nnake relied on the magistrate judge's determinations that the Government failed to establish actual fraud, and there was insufficient evidence that the property transfers were constructively fraudulent. She contended that the court should, therefore, "adopt[]" the magistrate judge's findings and conclusions and enter a final order in her favor.

It appeared to the court from Ms. Nnake's motion and the Government's response that both parties misunderstood the court's ruling regarding the magistrate judge's Report and the Government's motion (Doc. 606). Because the court had already ruled on the Report and the Government's motion (Doc. 606), and the Government had not yet filed another motion for writ of garnishment or relief in that respect, there was no pending application or matter before the court. On January 6, 2020, the court, therefore, denied Ms. Nnake's motion (Doc. 686) because it sought a "final" ruling or relief with respect to the Report and the Government's Motion that the court had already ruled on. Doc. 692. The court further explained that, if the parties wished to pursue further the garnishment issues raised in their briefs, the court would address them, including the parties' request to conduct discovery, after the Government filed an amended application for writ of garnishment, and one or both of the parties filed a formal, separate motion to conduct discovery that was not included in response to another motion or application.

On July 24, 2020, the Government served writs of garnishment on the following financial institutions: Bank of America, NA; Computershare; Transamerica Premier Life Insurance Company; Merrill Lynch, Pierce, Fenner & Smith, Inc.; and Columbia North Texas Subsidiary GP, LLC. These entities each filed answers to the writs between July 28, 2020, and August 28, 2020. After confirmation that each garnishee was served, the Government served Defendant Egubuchunam, Ms. Nnake, and her attorney with notices of garnishment.

Instead of requesting a hearing or filing objections within the time provided by 28 U.S.C. §§ 3202 or 3205, Ms. Nnake waited until November 18, 2020, before filing her pending Motion to Dissolve Garnishments and Return Property, Or Set a Deadline for the Government to Provide Evidence of Fraudulent Transfers or Property, Followed By A Hearing (Doc. 707). On February 22, 2021, the Government responded to Ms. Nnake's Motion.

A short time later, on March 1, 2021, the Government filed its Motion for Final Order of Garnishment (Doc. 716). Briefing on the Government's motion was complete as of March 29, 2021; however, Ms. Nnake moved for leave on April 6, 2021, to file a surreply to the Government's motion (Doc. 721). The certificate of conference to her motion for leave indicated that counsel would advise the court at a later time whether the motion for leave was opposed by the Government, but the promised "update" was never provided, and no response to Ms. Nnake's motion for leave was filed by the Government.

For the reasons that follow, the court determines that the Government's Motion for Final Order of Garnishment should be granted, and Ms. Nnake's motions should be denied except to the limited extent indicated.

## II.  Discussion

### A.  Ms. Nnake's Motion for Leave to File Sur-reply (Doc. 721)

After briefing on the Government's Motion for Final Order of Garnishment was complete, Ms. Nnake moved for leave to file a four-page surreply to the Government's motion on the following ground:

> The government filed a Motion and a Reply, briefing the garnishment action that has been before this Court for four years. Given the history and evolving posture of the arguments, Interested Party Chinyelu Nnake requests leave of the Court to file a brief sur reply, limiting her pleading to less than two pages of procedural history and less than two pages of legal arguments.

**Memorandum Opinion and Order – Page 5**

>> Accordingly, Ms. Nnake respectfully requests that the Court grant her leave to file a sur-reply on this important issue.

Nnake Mot. 1.  Before the court had an opportunity to rule on the Motion for Leave, Ms. Nnake filed her surreply (Doc. 720).

Surreplies are "appropriate only when the movant raises new legal theories or attempts to present new evidence at the reply stage." *Brackens v. Dallas Ind. Sch. Dist.*, No. 3:09-CV-06420-D, 2010 WL 5464823, at *5 (N.D. Tex. Sept. 20, 2010). Moreover, surreplies, and any other filing that serves the purpose or has the effect of a surreply, are highly disfavored, as they usually are a strategic effort by the nonmovant to have the last word on a matter. For this reason, and because the court has found surreplies in the past to be generally unhelpful in resolving pending matters, it normally does not grant leave to file a surreply as a routine matter absent a showing of exceptional or extraordinary circumstances. *See, e.g., Lacher v. West*, 147 F. Supp. 2d 538, 539 (N.D. Tex. 2001).

Ms. Nnake's motion for leave does not satisfy any of these requirements even if viewed in conjunction with her proposed surreply.  She does not seek leave to file her surreply to address new legal theories or evidence included in the Government's reply.  Moreover, she asserts in her proposed surreply that she stands by her response to the Government's motion and "believes that the arguments presented [in her response] should prevail."  Nnake Proposed Surreply 1.  If this is the case, the court fails to see why a surreply is necessary or warranted.

Ms. Nnake further asserts that the purpose of her surreply is to "briefly address the [G]overnment's failure to acknowledge the protracted history of this case, the [G]overnment's role in creating the delays, and the [alleged] prejudice to [her] that has result from the delays."  *Id.*  The alleged delays and prejudice that Ms. Nnake refers to, however, were known to her when she filed her response to the Government's Motion for Final Order of Garnishment, and she fails to point to

**Memorandum Opinion and Order – Page 6**

any reason why such matters could not have been included and addressed in her response. Likewise, Ms. Nnake asserts arguments based on the magistrate judge's findings and conclusions (Doc. 671) that were entered *approximately three years* before she filed her response to the Government's Motion for Final Order of Garnishment on March 15, 2021.  Accordingly, the court views her proposed surreply as an improper and unnecessary attempt to get the "last word."  The court, therefore, **denies** her Motion for Leave (702) and **strikes** her surreply that was filed without leave of court.

      **B.**    **Government's Motion for Final Order of Garnishment and Order Imposing Federal Lien  (Doc. 716)**

Pursuant to 18 U.S.C. §  3613 and 28 U.S.C. § 3205, the Government requests that the court "enter a final order of garnishment and federal lien against the substantial nonexempt property belonging or due to defendant-judgment debtor, [Defendant] Egubuchunam, and/or his former spouse, Chinyelu "Chi" Nnake."  Gov't Mot. 1.

The basis for the Government's authority to seek restitution from Defendant Egubuchunam is the MVRA, 18 U.S.C. § 3663A, which "provides for restitution to victims of federal crimes and affixes a lien on a defendant's property and rights to property to secure such restitution." *United States v. Berry*, 951 F.3d 632, 635 (5th Cir. 2020). Under the MVRA, the Government has authority to enforce a judgment that imposes a fine, and this authority extends to orders of restitution and special assessment fines. *United States v. Onyeri*, 996 F.3d 274, 283 n.7 (5th Cir. 2021) (citing 18 U.S.C. § 3613(a), (f)); *United States v. Elashi*, 789 F.3d 547, 549 & 551  (5th Cir. 2015) (citing 18 U.S.C. §§ 3013(b), 3613(a), & (f) and concluding that, under § 3613(c) of the MVRA, "federal criminal debts," including restitution orders and special assessment fines, are "treated in the same manner as federal tax liens").

Title 18, United States Code, Section 3613(a) provides civil remedies for satisfaction of an unpaid fine and provides that, except for property exempt from enforcement of a judgment under federal law, "[t]he United States may enforce a judgment imposing a fine in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a). Section 3613 further provides that a restitution order may be enforced by the United States by all "available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii).

One such permissible procedure is a writ of garnishment under 28 U.S.C. § 3205. In this regard, § 3205 provides as follows:

> A court may issue a writ of garnishment against property (including nonexempt disposable earnings) in which the debtor has a substantial nonexempt interest and which is in the possession, custody, or control of a person other than the debtor, in order to satisfy the judgment against the debtor. Co-owned property shall be subject to garnishment to the same extent as co-owned property is subject to garnishment under the law of the State in which such property is located. A court may issue simultaneous separate writs of garnishment to several garnishees. A writ of garnishment issued under this subsection shall be continuing and shall terminate only as provided in subsection (c)(10).

28 U.S.C. § 3205(a).

Within 20 days after receiving notice of a writ of garnishment, a judgment debtor may, pursuant to § 3202(d), request a hearing and move to quash the writs of garnishment for failure of the Government to comply with statutory requirements for the issuance of the writs or to claim exemptions. 28 U.S.C. § 3202(d). Section 3202, however, expressly limits the issues that can be addressed at such hearings to:

> (1) to the probable validity of any claim of exemption by the judgment debtor;
>
> (2) to compliance with any statutory requirement for the issuance of the postjudgment remedy granted; and
>
> (3) if the judgment is by default and only to the extent that the Constitution or another law of the United States provides a right to a hearing on the issue, to—

    (A) the probable validity of the claim for the debt which is merged in the judgment; and

    (B) the existence of good cause for setting aside such judgment.

*Id.* Within 20 days after receipt of the garnishee's answer, the United States or the judgment debtor may also object to the answer and request a hearing pursuant to § 3205(c)(5). The party objecting to the answer bears the burden of proving any such objection. *Id.*

    **1. Ms. Nnake is Not Entitled to a Hearing.**

  Here, Ms. Nnake did not assert any objections or request a hearing within the time allowed by sections 3202 and 3205. As noted, she instead waited until November 18, 2020—approximately three to four months after the garnishees' filed their answers and approximately two months after being notified by the Government regarding the served writs of garnishment and garnishment process—before filing her pending Motion to Dissolve Garnishments and Return Property, Or Set a Deadline for the Government to Provide Evidence of Fraudulent Transfers or Property, Followed By A Hearing (Doc. 707). Several months later on March 15, 2021, she also filed a response to the Government's Motion for Final Order of Garnishment.

  Ms. Nnake contends that the Government's Motion for Final Order of Garnishment should be denied because: (1) the Government is bound by the magistrate judge's prior rulings and barred by res judicata from raising a different legal theory than the fraudulent transfer argument previously presented to and decided by the magistrate judge's Report, to which the Government did not object; (2) the Government is not entitled to a lien because the federal government cannot ignore a final state order partitioning property and federal courts have held that a state court can modify or amend a lien as part of a divorce settlement; and (3) consideration of various equitable principles regarding innocent former spouses, former spouses as good faith transferees under the FDCPA, and the ability of the court to consider the financial needs of dependents in ordering

**Memorandum Opinion and Order – Page 9**

restitution weigh in favor of denying the Government's request for a final order of garnishment. For the same reasons, Ms. Nnake contends that, given the absence of any actual or constructive fraud, the court should issue an order dissolving the writs of garnishment on all of her accounts and return the accounts to her custody and control.

The grounds asserted in Ms. Nnake's Motion to Dissolve Garnishments and Return Property, Or Set a Deadline for the Government to Provide Evidence of Fraudulent Transfers or Property, Followed By A Hearing (Doc. 707) are substantially similar. The only difference is that she moved, in the alternative, for an order dissolving the writs of garnishment and returning the garnished property to her unencumbered *or* a hearing on such issues. Doc. 707 at 4. The request for a hearing, however, was not made within the time required by sections 3202 and 3205. Additionally, the grounds in Ms. Nnake's motion and response to the Government's motion do not identify, much less show, that any of the applicable exemptions in section 3613(a) apply.

Additionally, Ms. Nnake's arguments also do not fall within any of the limited grounds for which a hearing would be statutorily required or allowed under section 3202(d). Thus, no hearing is required, and any statutory right to a hearing was **waived** by her. Moreover, all of the issues that the court addresses below that she raised in opposition to the writs of garnishments and the Government's request for a final order of garnishment can be decided as a matter of law without a hearing.

> 2. **The Magistrate Judge's Findings and Conclusions and the Undersigned's Order Accepting Those Findings and Conclusions Do Not Have Any Binding or Res Judicata Effect.**

Ms. Nnake contends that the Government previously limited its garnishment efforts to its theory that the division of property in the Final Divorce Decree was fraudulent and done to escape Defendant Egubuchunam's restitution obligation. She asserts that the Government's Motion for

Final Order of Garnishment should be denied because the Government: (1) has not come forward with new evidence that the division and transfer of property was fraudulent; (2) did not previously object to the magistrate judge's findings or conclusions regarding the viability of its fraudulent transfer argument; (3) "fails to establish any manifest error of law" in its current motion to the magistrate judge's Report; and (4) delayed, without explanation, in advancing its current MVRA garnishment theory before now.  Nnake Resp. 12.  She, therefore, argues that, even though the Government's prior motion was denied without prejudice, it is bound by the magistrate judge's factual findings and legal conclusions that were previously accepted by the undersigned, and it is limited to the legal theory (fraudulent transfer under the FDCPA) previously urged.  Ms. Nnake further contends that the Government is attempting to improperly relitigate the magistrate judge's findings and conclusions, and it should not be allowed at this juncture to obtain reversal of the prior orders entered in this case given its previous failure to comply with those orders and Federal Rule of Civil Procedure 72's requirement that a party file "specific, written objections" to a magistrate judge's findings and conclusions.  *Id*. at 8.

The court disagrees. The Government is not attempting to improperly relitigate factual or legal issues previously decided regarding its prior request to void the divorce decree and division of property under a fraudulent transfer theory; rather, as Ms. Nnake correctly notes, the Government is no longer pursuing garnishment under the FDCPA based a fraudulent transfer theory.  Its current motion, instead, seeks a final order of garnishment under the MVRA, which it is entitled to do, because the MVRA authorizes the Government to enforce criminal debts such as those owed by Defendant Egubuchunam by all "available and reasonable means." 18 U.S.C. § 3664(m)(1)(A)(ii).

While the magistrate judge's Report states that the Government is authorized to enforce criminal debts under the MVRA, including through the use of the FDCPA's collection procedures, the magistrate judge's analysis was limited to fraudulent transfer under the FDCPA that are not at issue in the Government's current motion, and the law as stated by the magistrate judge in this regard was correct.

Accordingly, there would have been no reason for the Government to object, and its decision to not object to the magistrate judge's fraudulent transfers analysis under the FDCPA in no way precludes it now from proceeding under the MVRA because its justification for doing so is different. Specifically, the Government is no longer seeking to void Ms. Nnake's Final Divorce Decree and the division of property resulting from that decree on a fraudulent transfer theory under the FDCPA. It, instead, contends that it is entitled to a final order of forfeiture against Ms. Nnake because, even if not fraudulent, the division of property in the Final Divorce Decree does not affect its lien and right under federal law to garnish such property under the MVRA for purposes of enforcing the criminal debt owed by her ex-husband.

It is not uncommon for the Government to "use[] the garnishment provisions of the FDCPA to collect restitution obligations imposed in a criminal judgment." *Onyeri*, 996 F.3d at 283 n.7 (citations omitted). It is the MVRA, however, "that authorizes the Government to proceed under the FDCPA." *Elashi*, 789 F.3d at 551 (citing 18 U.S.C. § 3613(a)). For this reason, it is not entirely accurate to say that, in focusing on the MVRA now, rather than the FDCPA, the Government is seeking relief based on an entirely new legal theory. Regardless, its decision to previously take advantage of the collection procedures under the FDCPA did amount to a waiver or forfeiture of its right to obtain a final garnishment order against Ms. Nnake under the MVRA. *See id*. at 551

(rejecting argument that the MVRA did not apply because the Government elected to proceed under the FDCPA, not the MVRA).

Even if the Government had decided to continue to pursue garnishment based on its fraudulent transfer theory under the FDCPA, it would have been permissible for it to present new evidence in support of that theory because the court denied its prior garnishment application without prejudice. Further, no judgment or final order of garnishment has been entered to date, and, when the court denied without prejudice the Government's prior garnishment application, it did not limit the legal grounds that the Government could rely upon; nor did it set a deadline for the Government to file an amended garnishment application. Thus, the magistrate judge's Report and the orders entered to date by the court pertaining to garnishment have no res judicata effect, and the Government has not violated any court order, federal rule, or federal law. Consequently, these arguments by Ms. Nnake are not a valid basis for denying the Government's Motion for Final Order of Garnishment.

### 3. Ms. Nnake's Texas Divorce Decree Did Not Alter the United States' Prior Interest in or Lien on the Garnished Property.

"Federal law creates the lien, but state law defines the property interests to which the lien attaches." *Berry*, 951 F.3d at 635 (citations omitted). Ms. Nnake acknowledges as much but contends that federal courts have held that a state court, as part of a divorce settlement, can modify or amend a federal lien. For support, she relies on *Gardner v. United States*, 34 F.3d 985 (10th Cir. 1994), and argues that, contrary to the Government's assertion, a divorce decree can be used to strip a secured creditor's lien, and the Government's remedy in that situation is limited to the procedure for voiding fraudulent transfers under the FDCPA. According to Ms. Nnake, it would be inequitable and improper for the federal government to assert a lien that is contrary to the division of property in her divorce decree that was determined and approved by the state judge. In

addition, she argues that the *Loftis* and *Elashi* cases[1] cited in the Government's motion are distinguishable because they both dealt with the garnishment of a current wife's earnings.

As noted, the MVRA authorizes the United States to collect federal criminal debts "in accordance with the practices and procedures for the enforcement of a civil judgment under Federal law or State law." 18 U.S.C. § 3613(a). The MVRA broadly permits the United States, "[n]otwithstanding any other Federal law," to enforce federal criminal debts, including restitution and special-assessment fines, "against *all* property or rights to property of the person fined." *Elashi*, 789 F.3d at 549-51 (citations omitted).

Section 3613(a) expressly states that only property exempt from garnishment under the MVRA is property that the United States cannot seize to satisfy the payment of federal income taxes. *See id*. at 551 (citing *United States v. DeCay*, 620 F.3d 534, 539-43 (5th Cir. 2010)). Further, under the MVRA, federal criminal debts are treated the same as federal tax liens. *Elashi*, 789 F.3d at 552 n.3 (citing § 3613(a), (c)). Thus, the Government can garnish Defendant Egubuchunam's property under the MVRA unless the property falls under the MVRA's limited number of exemptions. *Elashi*, 789 F.3d at 550.

Ms. Nnake does not claim any such exemptions. She, instead, contends that the Government cannot or should not be allowed to garnish property she obtained as a result of her divorce from Defendant Egubuchunam. This argument, however, is contrary to both Fifth Circuit precedent and the MVRA. The Fifth Circuit has made clear that state law does not exempt community property from federal criminal debt collection efforts under the MVRA. *Id.* (citing *Medaris v. United States*, 884 F.2d 832, 833-34 (5th Cir. 1989)). State law is only considered for

---

[1] Nnake Resp. 13 (citing *Elashi*, 789 F.3d at 549-50; and *United States v. Loftis*, 607 F.3d 173, 176-78 (5th Cir. 2010)).

**Memorandum Opinion and Order – Page 14**

purposes of "determin[ing] what property interests the debtor had." *Id.* (citing *Medaris*, 884 F.2d at 833).

Based on the reasoning in *Medaris*, *Loftis*, and other cases, the Fifth Circuit in *Elashi* concluded that, under the MVRA, judgment liens obtained by the United States for federal taxes and federal criminal debt attach to the following types of community property defined under Texas law[2] notwithstanding any Texas exemptions to the contrary:

> (1) all of the debtor's solely managed community property; (2) all of the couple's jointly managed community property, including the nondebtor spouse's undivided one-half interest in the property; and, important here, (3) the debtor's one-half interest in his non-debtor spouse's solely managed community property, including her income.

*Elashi*, 789 F.3d at 551.

As in *Elashi*, Texas law applies in this case to determine what property interests Defendant Egubuchunam had before divorcing Ms. Nnake. Her and Defendant Egubuchunam's divorce papers and Final Divorce Decree provide that the divorce was finalized in accordance with the Texas Family Code. Their Final Divorce Decree further states that Defendant Egubuchunam was domiciled in Texas when he and Ms. Nnake filed for divorce and when the divorce became final.[3] Ms. Nnake does not contend that the property garnished is not sole-management community property under Texas law or that Defendant Egubuchunam did not have an interest in such property under Texas law before they divorced. The Government's evidence also establishes that she and

---

[2] Texas is a community property state, so analysis of "co-owned" property subject to a writ of garnishment is based on the relevant laws governing community property. *See* Tex. Fam. Code Ann. §§ 3.001-3.003, 3.202. Under the Texas Family Code, separate property is "(1) the property owned or claimed by the spouse before marriage; (2) the property acquired by the spouse during the marriage by gift, devise, or descent; and (3) recovery for personal injuries sustained by the spouse during marriage, except any recovery for loss of earning capacity during marriage." *Id*. § 3.001. Community property is "property, other than separate property, acquired by either spouse during marriage." *Id.* § 3.002. Property possessed by either spouse during marriage is presumed to be community property and the degree of proof necessary to establish that property is separate property is clear and convincing evidence. *Id.* § 3.003(a)-(b).

[3] *See United States v. Berry*, 951 F.3d 632, 637 (5th Cir. 2020) ("In general, the law of the debtor's domicile state defines the property interests to which a judgment lien may attach.") (citations omitted).

**Memorandum Opinion and Order – Page 15**

Defendant Egubuchunam did not file for divorce or obtain their Final Divorce Decree until *after* the restitution order and judgment in this case were entered and the United States recorded its lien. Thus, the United States' lien attached to the community property at issue *before the divorce was filed or granted*. This alone distinguishes *Gardner* this case.

*Gardner* is also distinguishable for other reasons. The outcome in *Gardner* and determination regarding what property interests a taxpayer had when the Internal Revenue Service made its assessment against him were based on application of Kansas law, which differs from Texas law. *Gardner*, 34 F.3d at 988-89. The court in *Gardner* concluded that "the filing of a petition of divorce [under Kansas law] creates a vested property interest in both spouses such that the property is not subject to a judgment creditor's lien or execution obtained against one of the spouses while the divorce action is pending." *Id.* at 987. Ms. Nnake, however, has not put forward any argument to suggest that Kansas, rather than Texas law, should apply. Under Texas law, the mere filing of divorce is not enough to divest the United States of a valid lien on a federal criminal debt when, as here, the lien arose before divorce proceedings were initiated and before the divorce became final. *See, e.g., United States v. Bueno*, No. MO-10-CR-1672013, WL 12228162, at *10 (W.D. Tex. June 11, 2013), *report and recommendation adopted*, 2013 WL 12228159 (W.D. Tex. Sept. 20, 2013) (applying Texas law to determine what property interests the defendant had that were subject to the Government's lien under the MVRA).[4] Ms. Nnake has not pointed the court to any Texas case to the contrary. Accordingly, her Texas divorce did not affect the Government's lien on the garnished property.

---

[4] In *Bueno*, the district court determined that the United States' "restitution lien under the MVRA arose and attached on the entry of judgment on March 3, 2011, after Third Party Respondent filed for divorce on May 8, 2008, but before the divorce was final on or about June 7, 2012." *Id.* Applying Texas law, the court concluded that the United States' lien was not affected by the divorce and division of marital property because "the division of property occurred after the lien arose upon entry of judgment under the MVRA." As a result, the defendant in *Bueno* "had a valid community property interest on the date of entry of judgment." *Id.*

**Memorandum Opinion and Order – Page 16**

> **4.   Ms. Nnake's Equity Arguments are Not Valid Bases for Dissolving the Writs of Garnishment or Denying the Government's Request for a Final Order of Garnishment.**

The imposition of the special assessment and restitution amounts ordered was mandatory. As already explained, special assessment and restitution amounts are collected in the same manner as criminal fines and are, therefore, treated in the same manner as federal tax liens. Thus, equity has no bearing on the issue of whether the Government is entitled under the MVRA to garnish the property at issue. Even if equitable principles were relevant, Ms. Nnake and her ex-husband both knew, when they made the decision to divorce and divide their property pursuant to the terms of the Final Divorce Decree, that Defendant Egubuchunam was already subject to the criminal judgment and the lien recorded and perfected by the United States before they filed for divorce. Accordingly, for this and the other reasons set forth in the Government's reply brief, none of Ms. Nnake's equitable arguments are valid bases for dissolving the writs of garnishment or denying the Government's Motion for a Final Order of Garnishment.

> **C.   Ms. Nnake's Motion to Dissolve Garnishments and Return Property, Or Set a Deadline for the Government to Provide Evidence of Fraudulent Transfers or Property, Followed By A Hearing (Doc. 707)**

In this motion, Ms. Nnake requests the following relief based on her contention that, in 2018, the magistrate judge found no evidence of fraudulent transfers of property, and the Government has yet to come forward with evidence of fraudulent transfers:

> The USAO has recently filed notices of garnishment to financial institutions wherein some of the subject assets are held. These are all based upon the government's claim to property that was once community property prior to the divorce of Defendant EGUBUCHUNAM and NNAKE. These are found at Docket Sheet Numbers 693-700. Since there are now actions against NNAKE, NNAKE moves this Court to determine that there is no evidence of fraudulent transfers of the subject assets, or to conduct a hearing for the same.
>
> . . .

> Although there are now current actions in the form of garnishments, there is no further evidence of a fraudulent transfer. NNAKE respectfully moves this Court to: 1) dissolve or dismiss the garnishment actions and return any property to her; 2) make a determination regarding the return of property unencumbered if and after any further evidence of alleged fraud that the USAO has to present, with discovery as needed; or 3) schedule a hearing of the same.

Nnake Mot. 4.

The Government's decision to no longer pursue relief under 18 U.S.C. §§ 3304 and 3306, appliable to fraudulent transfers moots Ms. Nnake's motion to the extent she requests that the court set a deadline for the Government to provide evidence of fraudulent transfers and a hearing on this issue. Moreover, the court has determined, for the reasons already explained, that the Government is entitled, as a matter of law, to a final order of garnishment under 28 U.S.C. § 3205, and Ms. Nnake waived her right to a hearing under the MVRA. Her motion (Doc. 707) is, therefore, **denied**, except to the extent that the Government is no longer seeking to garnish the financial accounts identified in the Final Order of Garnishment to be entered by the court.

### III. Conclusion

For the reasons explained, the court **grants** Government's Motion for Final Order of Garnishment and Order Imposing Federal Lien (Doc. 716); **denies** Ms. Nnake's Motion for Leave to File Sur-Reply to the Government's Motion for Final Order of Garnishment (Doc. 721); **strikes** Ms. Nnake's Surreply (Doc. 720) that was filed without leave of court; and **denies** Ms. Nnake's Motion to Dissolve Garnishments and Return Property, Or Set a Deadline for the Government to Provide Evidence of Fraudulent Transfers or Property, Followed By A Hearing (Doc. 707), except to the extent that the Government is no longer seeking to garnish the financial accounts identified in the Final Order of Garnishment that will be entered by the court by separate document.

**It is so ordered** this 21st day of December, 2021.

Sam A. Lindsay
United States District Judge